(No. 2366—

FRED J. SHELL, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 13, 1934.*

FRED J. SHELL, pro se.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

For many years prior to June 17, 1933, claimant was the official court reporter of the Circuit Judge residing in Macon County, in the Sixth Judicial Circuit of this State. On the last mentioned date he was appointed by Hon. Horace W. McDavid of Decatur, one of the judges of said Judicial Circuit, as his official court reporter, and the original order of appointment was duly filed in the office of the Auditor of Public Accounts of the State. On September 11, 1933, Judge McDavid died, and thereafter the judicial work of said Sixth Circuit was carried on by the two remaining judges of said district, to-wit, Hon. John H. Armstrong of Champaign, and Hon. Joseph L. McLaughlin of Sullivan.

After the death of Judge McDavid, the claimant was requested by Judge McLaughlin, then the presiding judge of the Circuit Court of Macon County, to continue with his work and duties as official court reporter of such court, and thereafter continued in the performance of such duties.

On January 29, 1934, a special election was held to fill the vacancy caused by the death of Judge McDavid and Hon. Charles Y. Miller was elected to fill such vacancy. On February 6, 1934, claimant was reappointed as official court reporter in and for the Circuit Court of Macon County, by said Judge Miller, and has thereafter continued to act as such.

Claimant received his regular salary of $270.00 per month from the time of his appointment by Judge McDavid to and including the month of September, 1933. During October, 1933, he received a notice from the State Auditor to the effect that on account of the death of Judge McDavid, claimant would not receive any further compensation from the State of Illinois until such time as a new appointment of official court reporter might be made by the successor to Judge McDavid.

Although claimant performed all of the duties of court reporter from the time of the death of Judge McDavid, to-wit, September 11, 1933, until the 6th day of February, A. D. 1934, he has not been paid for his services during the months of October, November and December, 1933, nor for the month of January, or the first five days of the month of February, in 1934. He has therefore filed his complaint in this court asking an award for the amount of the salary due him for the time above mentioned at the rate of $270.00 per month, to-wit, the sum of $1,128.23.

It appears from the certificate of Judge McLaughlin that he held all of the Circuit Court in Macon County after the death of Judge McDavid; that it was practically impossible to perform the work in that court unless the services of a competent and skillful reporter could be procured; that he requested claimant to continue as official court reporter of said court, and that claimant did so, and handled all matters that came before the court, so far as his duties required, in a competent and skillful manner, and that he also did a large amount of other work in and about the work of said court at the request of said Judge McLaughlin during all of the time which elapsed from the date of the death of Judge McDavid to the date on which Judge Miller took his oath of office,

to-wit on February 6, 1934; that in his opinion the services rendered by claimant during all of such period were necessary for the orderly procedure of said court, and that such services were well performed.

The right of the claimant to an award depends upon the question as to whether his term of office expired at the time of the death of Judge McDavid, or whether he continued after the death of Judge McDavid until the time of the appointment of a new court reporter by the successor to Judge McDavid.

Claimant was appointed by Judge McDavid pursuant to the provisions of an Act of the General Assembly of the State of Illinois entitled ''An Act to authorize the judges of Circuit, Superior and City Courts to appoint shorthand reporters for the taking and preservation of evidence, and to provide for their compensation,'' in force July 1, 1929, as amended.

Section one (1) of said Act provides in part as follows:

"That each of the several judges of the Circuit, Superior and City Courts in this State be, and they are hereby authorized to appoint one Official Shorthand Reporter * * * * * *. Such appointment shall be in writing and shall be filed in the office of the Auditor of Public Accounts and continue in force until revoked by the judge making said appointment. The Reporter so appointed shall hold his position during the pleasure of the judge so appointing him, not, however, to extend beyond the time the judge making such appointment shall be elected for."

Said Act also provides that such reporter, before entering upon the duties of his office, shall take and subscribe the official oath of office. Consequently, under the provisions of that Act, as well as the provisions of Sections twenty-four (24) and twenty-five (25) of Article five (5) of the Constitution, the claimant was an officer and not an employee.

A similar question was presented in the case of *The People ex rel Kelley,* 134 Ill. App. 642. In that case leave was given to file an information in the nature of a *quo warranto* seeking to oust Mrs. Kelley from her position as official court reporter for the Circuit Court of Cook County, which she then held by virtue of her appointment made by Judge Murray F. Tuley, deceased. The appointment was made by an order of record July 8, 1903, ''for a term ending the first day of June, 1909, to hold her office during the pleasure of the judge appointing her, as provided by said Statute.'' The Statute involved in that case was not identical with the Statute in force at the time claimant in this case was appointed, but seems to

be substantially the same so far as the questions involved in this case are concerned. It was contended in that case that the authority of Mrs. Kelley to hold the office ceased upon the death of Judge Tuley. In that case the court said:

"The only question is whether the appointment is still in force, Judge Tuley, by whom or at whose instance it was made, having since died. The obvious meaning of the statutory provision above quoted is that the term of the reporters so appointed while terminable at any time by the judges appointing them shall in no event extend beyond the term of office of such judges. It does not follow, however, that the reporter's appointment terminates with the death before the expiration of his official term of the judge by whose order he was appointed, merely because the judge so appointing can no longer exercise at his pleasure the power of removal. The continued employment of the reporter by other judges of the same court after such death, may be considered in the nature of a recognition and affirmation of such appointment by such judges." * * * * * * "Respondent has continued to perform services for the judges of the Circuit Court by whom her bills have been duly certified, and we are of the opinion her appointment is still in force."

It would seem, therefore, as though the claimant's term of office did not expire upon the death of Judge McDavid, but that he continued in his office until the time of the appointment of another court reporter by the successor to Judge McDavid.

However, even if his term had expired with the death of Judge McDavid, we feel that he would hold over until the time of the appointment and qualification of his successor under the law of this State.

In the case of *The People* vs. *Schweitzer*, 280 Ill. 437, the court, on page 451, said:

"In legal contemplation, an office that has once been created is necessary, and it is never vacant and is presumed to be continuously filled until it is abolished."

In 46 Corpus Juris, page 971, Section 117, the law is laid down as follows:

"While the word 'vacancy' as applied to an office is one which has no technical meaning, an office is vacant in the eye of the law whenever it is unoccupied by a legally qualified incumbent who has a lawful right to continue therein until the happening of some future event. On the other hand, an office is not vacant so long as it is supplied, in the manner provided by the constitution or law, with an incumbent who is legally qualified to exercise the powers and perform the duties which appertain to it. The law abhors vacancies in public offices, and courts generally indulge in a strong presumption against a legislative intent to create, by Statute, a con-

dition which may result in an executive or administrative office becoming, for any period of time, wholly vacant and unoccupied by one lawfully authorized to exercise its functions."

The wording of the Act of the General Assembly authorizing the appointment of court reporters does not, in itself, indicate that the death of the judge making the appointment should create a vacancy in the office of reporter. Had it been so intended, the Legislature would certainly have incorporated words to that effect therein, instead of providing that the reporter should hold his position "during the pleasure of the judge so appointing him, not, however, to extend beyond the time the judge making the appointment shall be elected for." We cannot assume that the Legislature intended to have a vacancy in the office of the court reporter between the time of the death of the judge making the appointment and the time of the election of his successor.

We conclude, therefore, that the claimant rightfully held the office of court reporter until the appointment of his successor by Judge Miller, and having performed all of the duties of such office in a competent and skillful manner, is entitled to the salary claimed by him.

Award is therefore entered in favor of the claimant for the amount claimed, to-wit, the sum of Eleven Hundred Twenty-eight Dollars and Twenty-three cents ($1,128.23).